949 F.2d 266
 60 USLW 2348
 JOHN MORRELL & COMPANY, Administrative Office of the United
States, Intervenor, Appellee,
v.
LOCAL UNION 304A OF THE UNITED FOOD AND COMMERCIAL WORKERS,
AFL-CIO AND CLC; United Food and Commercial
Workers International Union, AFL-CIO,
and CLC, Appellants,
Rick Standing, Mark Anderson, Morris E. Buchholz, Leslie A.
Sundermann, Jerone E. Nelson, Duane Skyberg,
Robert B. Vanderwoude, Ray Handel, Frank
Petheram, Debra L. Olson.
JOHN MORRELL & COMPANY, Administrative Office of the United
States, Intervenor, Appellee,
v.
LOCAL UNION 304A OF THE UNITED FOOD AND COMMERCIAL WORKERS,
AFL-CIO AND CLC; United Food and Commercial
Workers International Union, AFL-CIO,
and CLC, Appellants.
 No. 90-5396.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 15, 1991.
Decided Nov. 18, 1991.
 
 Richard Roesel, Washington, D.C., argued (Donald R. Schultz and Craig A. Pfeifle, Rapid City, S.D., and Nicholas W. Clark, Washington, D.C., on the brief), for appellants.
 Michael E. Robinson, Washington, D.C., argued (Stuart M. Gerson, Philip N. Hogen and Douglas N. Letter, Washington, D.C., on the brief), for intervenor, appellee.
 Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.
 BEAM, Circuit Judge.
 
 
 1
 Local Union 304A of the United Food and Commercial Workers, AFL-CIO and CLC, and United Food and Commercial Workers International Union, AFL-CIO and CLC, appeal an order of the district court directing them to pay the clerk of the district court a fee of $281,450.25. This fee represents forty-five days' interest on treasury bills that were purchased as security pending appeal of a judgment against the Unions. The Unions argue that no authority exists for the awarding of this fee. We disagree and affirm.
 
 I. BACKGROUND
 
 2
 This case arises tangentially from a lawsuit by John Morrell & Company against the Unions, in which Morrell received a $24.6 million judgment for breach of a no-strike clause in a collective bargaining agreement. See John Morrell & Co. v. Local Union 304A, 913 F.2d 544 (8th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991). In preparation for an appeal from that judgment, the Unions filed a motion with the district court on December 2, 1988, requesting that the court dispense with the requirement of a supersedeas bond because the bond would cost between $600,000 and $800,000. The district court denied the motion.
 
 
 3
 Shortly thereafter, the Unions purchased a United States Treasury Bill as security for the judgment. The treasury bill was made out to the benefit of the clerk of the district court and purchased in the amount of the judgment. On February 16, 1989, the Unions filed a "safekeeping receipt" with the clerk of court, evidencing their purchase of the treasury bill. Morrell had no objection to the purchase of a treasury bill as security in lieu of a supersedeas bond and the arrangement was approved by the district court on February 23, 1989.
 
 
 4
 On January 16, 1990, as the maturity date of the treasury bill drew near, the district court ordered that the Unions continue to repurchase, in the name of the clerk of the district court, six-month treasury bills in the amount of the principal and interest earned and that the Unions continue to file safekeeping receipts for these purchases with the clerk. After issuing this order, the clerk sent the district court a request and proposed order to take a fee from the Unions' security. The clerk claimed, pursuant to 28 U.S.C. § 1914(b) and a notice posted at 54 Fed.Reg. 20,407 (1989), entitlement to forty-five days' interest on the amount of the security. The district court, on February 5, 1990, issued an order to the Unions to show cause why payment of the fee should not be made, and on April 19, 1990, the district court permitted the Administrative Office of the United States Courts to intervene.
 
 
 5
 On June 28, 1990, the district court ruled against the Unions and ordered the clerk of the court to deduct, "from the income earned on the investment, a fee equal to the first forty-five days' income earned on the investment, amounting to $281,450.25." John Morrell & Co. v. Local Union 304A, 739 F.Supp. 499, 502 (W.D.S.D.1990). The district court did not address every objection raised by the Unions, but it concluded that the fee was due because the "security, deposited on behalf of the clerk of the Court, is 'moneys' within the meaning of 28 U.S.C. § 2041 and [Fed.R.Civ.P.] 67." Id. The district court also concluded that the fee was justified because the amount of the fee "pales in the face of the services provided" by the district court in the underlying lawsuit. Id.
 
 II. DISCUSSION
 
 6
 The Unions argue that neither the notice in the Federal Register nor the statutes on which the fee scheme rests authorize the imposition of a fee in their case. They also argue that the fee imposed by the district court is not commensurate with the services performed or the duties assumed by the clerk. We disagree.[1]
 
 
 7
 A brief history of the fee imposed on the Unions might put this issue in a better perspective. In September 1988, the Judicial Conference of the United States, pursuant to its authority in 28 U.S.C. §§ 1913, 1914, and 1930, "amended the miscellaneous fee schedules for the appellate, district, and bankruptcy courts to assess a charge of up to three percent for the handling of registry funds." Joint Appendix, at 103 (quoting Report of the Proceedings of the Judicial Conference of the United States, at 64 (Sept. 14, 1988)).[2] The Judicial Conference directed that the charges "be assessed from interest earnings, and in accordance with a detailed fee schedule to be issued by the Director of the Administrative Office [of the United States Courts] after consultation with the Clerks' Advisory Committee and the Chairmen of the Judicial Conference Committees on Judicial Improvements and Bankruptcy Administration." Id.
 
 
 8
 After some experimentation and research, including hiring a consultant to do a "survey of the fees charged by other custodial managers for services similar to those performed by clerks of court," the Director of the Administrative Office determined that the registry fund fee should be established "in the form of retention of the first 45 days' interest earned on each registry deposit." Id. at 97, 99 (quoting Affidavit of L. Ralph Mecham, Director of the Administrative Office of the United States Courts (April 4, 1990)). "Precedent for this type of fee was found in the Internal Revenue Service's practice of not paying interest on refunds of tax overpayments issued within 45 days after a return is filed." Id. at 99.
 
 
 9
 The Director of the Administrative Office of the United States Courts announced the initiation of this fee in a notice published in the Federal Register on May 11, 1989. The "Summary" of that notice provides the following:
 
 
 10
 This notice is to inform all interested parties that each clerk of court, whose fee schedules are set by the Judicial Conference of the United States under the authority of 28 U.S.C. 1913, 1914, and 1930, will assess a fee for the handling of all funds deposited in noncriminal proceedings with the court and held in interest bearing accounts or instruments pursuant to 28 U.S.C. 2041 and Rule 67 of the Federal Rules of Civil Procedure. The fee will be equal to the first 45 days income earned on each deposit into the court's registry.
 
 54 Fed.Reg. 20407 (1989).[3]
 
 11
 The Unions argue that the "plain meaning" of the language in this notice and in 28 U.S.C. § 2041 does not entitle the clerk to a fee.[4] The Unions contend that the notice and statute only authorize a fee for the handling of "funds" or "money" "paid into" or "deposited with" the clerk, and that the filing of a safekeeping receipt with the clerk does not come within the ordinary meaning of those terms. In other words, the Unions argue that a safekeeping receipt, for example, is not "money" nor is it negotiable as a medium of exchange--it is simply a receipt evidencing a transaction.
 
 
 12
 We are not persuaded by this argument. The Unions suggest far too narrow a definition for the terms used by Congress in section 2041 and the language used by the Administrative Office in its fee notice. Furthermore, the notice published in the Federal Register is simply that--a notice. It informed the public that a new fee scheme would soon be put into effect, it provided some background information on the fee, and it summarized the way in which the fee arrangement would operate. The Unions are mistaken in assuming that the language used in the notice has a binding effect, like a pronouncement of law. Even the labels used by the Administrative Office in the notice suggest otherwise. For example, the sections relied on by the Unions are labeled "Summary" and "Supplementary Information." The notice was clearly not intended to provide a comprehensive statement of the new fee procedure.
 
 
 13
 The Unions also argue that there is no authorization for the fee because section 2041 instructs the clerk to invest the funds. Section 2041, however, does not preclude investment by a litigant nor does it eliminate a fee when the funds are invested by a litigant. Indeed, the procedures issued in June 1989 by the Administrative Office, regarding implementation of the new registry fee, anticipate this situation. These procedures provide, under the section labeled "Application Method," that
 
 
 14
 "[t]he fee will be applied to all invested funds held in non-criminal cases or proceedings in the name and to the credit of the court or its officers, whether initially deposited with the court and invested by the clerk, or invested by the litigant with custody conveyed to the court subsequently.
 
 
 15
 Joint Appendix, at 125 (emphasis added).
 
 
 16
 The Unions also argue that the fiduciary responsibilities assumed and the services performed by the clerk are not commensurate with a fee in excess of $280,000. While we agree that in this instance the clerk did not act as he or she usually might--that is, in directly receiving the funds, making an investment, etc.--the clerk's duties, as the Administrative Office points out in its brief, were not insignificant. Cf. United States v. Sperry Corp., 493 U.S. 52, 110 S.Ct. 387, 394-95, 107 L.Ed.2d 290 (1989) (user fee deducted from award by Iran-United States Claims Tribunal need not be precisely calibrated to the use that the user made of government services). The clerk had to monitor the maturity dates of the treasury bills and determine when they should be repurchased. The clerk also had to act as a trustee, making sure that the funds were not paid out to the wrong party and insuring the funds against loss.[5]
 
 
 17
 One final note should be made about the district court's decision. Although we affirm the judgment, we do not agree with the district court's rationale that the fee in this case is justified because the court system spent a substantial amount of time and money resolving the underlying claim against the Unions. That is not the purpose of the fee and we do not consider it as a basis for affirming the judgment below.
 
 III. CONCLUSION
 
 18
 For the reasons stated, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Unions also argue that the fee violates the origination and taxation clauses of the United States Constitution. We believe that these arguments are completely without merit and do not warrant discussion
 
 
 [2]
 The amendment was contingent upon language being included in legislation to make the fee revenues available directly for use by the judiciary. This authority was granted in the judiciary's appropriations act for fiscal year 1989
 
 
 [3]
 The Administrative Office of the United States Courts has since changed the method of assessing the court's registry fee so that the clerk receives a charge of ten percent of the income earned on the funds. See 55 Fed.Reg. 42867 (1990)
 
 
 [4]
 Section 2041 provides:
 All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.
 This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court.
 28 U.S.C. § 2041 (1988).
 
 
 [5]
 The responsibilities of the clerk are described in an affidavit by the Director of the Administrative Office of the United States Courts:
 clerks of court have full fiduciary responsibilities for accepting, depositing, redepositing, safekeeping, disbursing, and accounting for these proceeds. See, e.g., Comptroller General Decision Nos. B-200108 and B-198558 (January 23, 1981), holding that registry funds are held by the Government as statutory trustee for the rightful owners, that an officer of the United States can be accountable for such funds, and that appropriated funds may be used to restore losses from court registries.
 Joint Appendix, at 96.